

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Robert A. Siegel
Jeffrey I. Kohn

Attorneys for Plaintiff Delta Air Lines, Inc.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DELTA AIR LINES, INC., <br><br> Plaintiff, <br><br> -against- <br><br> ASSOCIATION OF FLIGHT ATTENDANTS, CWA, <br><br> Defendant. | **CV 10- 1129** <br><br> Case No. <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br>  |

POHORELSKY, M.J.

Plaintiff Delta Air Lines, Inc. ("Delta"), by and through its counsel, O'Melveny & Myers

LLP, for its Complaint against the Association of Flight Attendants, CWA ("AFA"), alleges as

follows:

## NATURE OF THE ACTION AND RELIEF SOUGHT

1.     Delta brings this action for declaratory and injunctive relief to prohibit the AFA

from pursuing a grievance and arbitration proceeding styled as Grievance No. 88-77-02-036-10

(the "Scope Clause Grievance" or the "Grievance") that was initiated by the AFA pursuant to a

collective bargaining agreement the AFA entered into with Northwest Airlines, Inc.

("Northwest") prior to Northwest's acquisition by and merger into Delta.  Although the AFA

filed the Scope Clause Grievance as the union representative for those Delta flight attendants

who were employed by Northwest prior to the merger, the Grievance would not affect only pre-

merger Northwest flight attendants but instead would also significantly limit the work assignments of more than 13,000 pre-merger Delta flight attendants (approximately 65% of the combined post-merger flight attendant work group), who are not represented by the AFA or any other union. The Scope Clause Grievance additionally seeks to limit the types of post-merger Delta-operated aircraft that more than 12,000 pre-merger Northwest and pre-merger Delta pilots may fly even though these pilots are represented by a union other than the AFA.

2.      Because it seeks to directly affect the work schedules and opportunities of Delta flight attendants who worked for Delta prior to the Northwest merger—and to do so even though the post-merger flight attendant representation issues have not been resolved by the National Mediation Board ("NMB") under Section 2, Ninth, of the Railway Labor Act ("RLA"), 45 U.S.C. § 152 (Ninth)—the Scope Clause Grievance raises, implicates, and is inextricably intertwined with a "representation dispute" within the exclusive jurisdiction of the NMB. As such, the AFA's Scope Clause Grievance is not subject to the grievance process and arbitration jurisdiction of the System Board of Adjustment as established in Sections 27 and 28 of the pre-merger Northwest-AFA collective bargaining agreement (the "System Board Procedure"), and the declaratory and injunctive relief requested by Delta in this Complaint should be granted. *See Global Aero Logistics Inc. v. Air Line Pilots Ass'n*, No. 08-1845, 2008 U.S. Dist. Lexis 46621, at *16 (E.D.N.Y. June 17, 2008) (Gleeson, J.); *Indep. Union of Flight Attendants v. Pan Am. World Airways, Inc.*, 664 F. Supp. 156, 158-60 (S.D.N.Y. 1987), *aff'd*, 836 F.2d 130 (2d Cir. 1988); *Flight Eng'rs' Int'l Ass'n v. Pan Am. World Airways, Inc.*, 716 F. Supp. 110, 113-15 (S.D.N.Y. 1989), *aff'd*, 896 F.2d 672 (2d Cir. 1990).

## JURISDICTION AND VENUE

3.     This Court has subject-matter jurisdiction to issue the relief requested herein: (a) under 28 U.S.C. § 1331, because this case is a civil action arising under the laws of the United States, namely, the RLA, 45 U.S.C. §§ 151 *et seq.*; and (b) under 28 U.S.C. § 1337, because this case is a civil action arising under an Act of Congress regulating commerce, namely, the RLA. The declaratory and injunctive relief requested herein are further authorized by 28 U.S.C. §§ 2201(a) and 2202, respectively. However, neither this Court nor an arbitration tribunal under the RLA has jurisdiction to adjudicate the merits of the underlying claim raised by the AFA's Scope Clause Grievance.

4.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1), because the AFA represents flight attendants who are based in this District and therefore does business and resides in this District. In addition, Delta conducts substantial airline operations in this District, at LaGuardia Airport and John F. Kennedy International Airport, and maintains a flight attendant base in this District.

## PARTIES

5.     Plaintiff Delta is a certificated air carrier engaged primarily in the transportation of persons and property in interstate and international commerce. Delta is a "common carrier" within the meaning of Section 201 of the RLA, 45 U.S.C. § 181, and therefore is subject to the provisions of the RLA. As a result of its acquisition of Northwest on October 29, 2008, Delta became the largest passenger airline in the world. Delta currently has more than 20,000 U.S.-based flight attendants.

6.     Defendant AFA is an unincorporated association organized for the purpose and objective of acting as a labor organization within the meaning of Section 1, Sixth, of the RLA,

3

45 U.S.C. § 151 (Sixth). AFA's principal place of business is in Washington, D.C. AFA operates as a division of another large labor union, the Communications Workers of America. Prior to Delta's acquisition of Northwest, the AFA was certified by the NMB to be the collective bargaining representative of the flight attendants employed by Northwest. The AFA has never been certified by the NMB to represent flight attendants employed by Delta. In fact, Delta flight attendants have twice rejected efforts by the AFA to become their union representative.

### FACTUAL BACKGROUND

**Representation Disputes Under The RLA**

7.     Section 2, Fourth of the RLA, 45 U.S.C. § 152, Fourth, provides, *inter alia*, that "[t]he majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for purposes of this chapter." The NMB has long interpreted this statutory language to require system-wide representation for each craft or class of a carrier's employees. *See, e.g., LSG Lufthansa Servs., Inc.*, 25 N.M.B. 96, 108 (1997) ("The Board's longstanding practice is to conduct elections across a carrier's entire system. . . . Crafts or classes include all of the employees working in the classification deemed eligible, regardless of work locations."). For example, all of an airline's flight attendants throughout the United States would comprise one unit for collective bargaining purposes, and the NMB would not conduct a representation election or certify a collective bargaining representative for only a portion of an airline's flight attendants.

8.     Section 2, Ninth, of the RLA, 45 U.S.C. § 152, Ninth, provides, in pertinent part, as follows:

4

> If any dispute shall arise among a carrier's employees as to who are
> the representatives of such employees designated and authorized in
> accordance with the requirements of this chapter, it shall be the
> duty of the Mediation Board, upon request of either party to the
> dispute, to investigate such dispute and to certify to both parties, in
> writing, within thirty days after the receipt of the invocation of its
> services, the name or names of the individuals or organizations that
> have been designated and authorized to represent the employees
> involved in the dispute, and certify the same to the carrier.

Section 2, Ninth, vests exclusive jurisdiction over representation disputes in the NMB.

*Switchmen's Union v. Nat'l Mediation Bd.*, 320 U.S. 297 (1943).

9.      The NMB's exclusive jurisdiction over representation disputes encompasses
disputes flowing from mergers and other transactions between two carriers. This exclusive
jurisdiction includes not only disputes over whether a union represents a system-wide craft or
class of employees following a merger, *see W. Airlines, Inc. v. Int'l Bhd. of Teamsters*,
480 U.S. 1301, 1302 (1987) (O'Connor, J.), but also post-merger disputes, such as the AFA's
Scope Clause Grievance, regarding assignment of work responsibilities between groups of
employees even where a union is not seeking an extension of its representation certification. *See
Flight Eng'rs' Int'l Ass'n v. Pan Am. World Airways, Inc.*, 896 F.2d 672, 674 (2d Cir. 1990)
(affirming dismissal of union's lawsuit to compel arbitration of scope clause grievance; stating
that "the NMB 'must have the opportunity to define how, and by whom, groups of employees in
this airline merger situation are to be represented;' only after the NMB's determination 'may the
union and the employer, or their arbitrator, establish or interpret contractual working
conditions.'") (citation omitted); *Indep. Union of Flight Attendants*, 664 F. Supp. at 158 (same;
stating that "a dispute may be considered representational, even if it does 'not arise between two
rival representatives. It is enough that there is one claimant and employees who are or who may
be either hostile or indifferent.'") (citations omitted); and *Global Aero Logistics Inc.*, 2008 U.S.

Dist. Lexis 46621, at *16 (granting carriers' motion to enjoin union's prosecution of scope clause grievances; explaining that "[i]f the System Board were to decide [the union's] grievances in [the union's] favor, the work schedules and opportunities of the [other airlines'] pilots would be affected," and therefore "the grievances implicate those pilots' representation rights.").

10. The NMB has established procedures for the resolution of representation disputes which arise in the context of airline mergers. Under those procedures, and based on one D.C. Circuit decision, the carrier/employer is not permitted to initiate representation dispute proceedings before the NMB; only unions or employees may do so. *See Ry. Labor Executives Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 662 (D.C. Cir. 1994) (*en banc*).

11. On July 27, 2009, the AFA filed an application with the NMB to represent the combined post-merger group of Delta flight attendants. By that application, the AFA asserted that, as a result of the Delta-Northwest merger, (a) Delta and Northwest constituted a single transportation system for union representation purposes under the RLA, and (b) a dispute existed over the post-merger representation of the combined flight attendant craft or class. The AFA subsequently withdrew its representation application on November 3, 2009, but did not disavow the factual assertions contained in its prior filing with the NMB. AFA's President stated at the time that the AFA intended to re-file its representation application after the NMB made proposed changes to its rules for representation elections that are perceived by the AFA to be favorable to its organizing efforts.

12. Accordingly, to date there has been no resolution of the flight attendant representation issues which have arisen from the Delta/Northwest merger—the representation controversy remains pending for resolution by the NMB pursuant to Section 2, Ninth, of the RLA.

**Delta's Merger And Operational Integration With Northwest**

13. On or about April 14, 2008, Delta announced its agreement to acquire Northwest and to merge Northwest into Delta.

14. Shortly thereafter, in June 2008, Delta negotiated a combined pilot collective bargaining agreement with the Air Line Pilots Association ("ALPA") that was to be applicable to the pre-merger Delta and pre-merger Northwest pilots as a joint, post-merger work group upon the closing of the Delta/Northwest acquisition. The agreement between Delta and ALPA included a process for obtaining and implementing a combined seniority list of all pre-merger Delta and pre-merger Northwest pilots, a combined pay and benefits structure, and a combined set of work rules. Because of regulatory requirements, however, the joint collective bargaining agreement provided for separate pilot flying—i.e., pre-merger Delta aircraft would be flown only by pre-merger Delta pilots and pre-merger Northwest aircraft would be flown only by pre-merger Northwest pilots—until a single operating certificate was issued by the Federal Aviation Administration ("FAA").

15. Delta's acquisition of Northwest was completed on October 29, 2008, and the combined pilot collective bargaining agreement became effective on October 30, 2008. Once the combined collective bargaining agreement became effective, the pre-merger labor agreement between Northwest and ALPA terminated. Shortly thereafter, the post-merger combined Delta pilots system seniority list became effective, and the pre-merger Northwest Airlines, Inc. pilots system seniority list terminated.

16. Subsequent to Delta's acquisition of Northwest, and consistent with its publicly-announced plans, Delta took a variety of measures to integrate the previously-separate airline operations of Northwest and Delta. These measures included painting the substantial majority of

7

pre-merger Northwest aircraft with the Delta livery, standardizing employee uniforms, merging

Northwest's passenger reservations system and airport computer systems into Delta's,

integrating pre-merger Northwest and pre-merger Delta aircraft mechanics and other groups of

ground employees, merging Northwest's and Delta's frequent flyer programs, merging pilot

scheduling systems, and using an integrated set of customer service procedures.

17.     As a result of the successful completion of a detailed and time-consuming process

to combine FAA-regulated operating functions and processes, the FAA issued a single operating

certificate to Delta on December 31, 2009.  That certificate transferred to Delta the entire

authority to conduct airline flight operations which had previously been conducted by Northwest.

On the same date, Northwest Airlines, Inc. ceased to exist as a legal entity and as an operating

airline.  There are no longer any flights that are operated by Northwest Airlines, no longer any

flights that carry the former Northwest airline designator code ("NW"), no longer any flights or

passengers identifiable as those of Northwest Airlines, and no longer any Northwest pilots or

other Northwest employees.  Upon issuance of the single operating certificate, and as provided

for in the combined pilot collective bargaining agreement, Delta began to integrate the pilots and

aircraft of the two pre-merger carriers, utilizing the single combined pilot seniority list for

bidding and work assignments.

18.     In December 2009, Delta posted a combined pilot vacancy bid in connection with

Delta's 2010 summer schedule.  In accordance with Delta's combined pilot collective bargaining

agreement, this vacancy bid allowed any pilot to bid for and be awarded any position based on

the pilot's placement on the combined, post-merger Delta pilot seniority list, subject to

limitations on the award of positions in the B-777 and B-747 aircraft categories.  This initial

vacancy bid resulted in a total of 1,971 awards, including 253 pre-merger Northwest pilots who

were awarded positions in what had been pre-merger Delta aircraft categories and 277 pre-merger Delta pilots who were awarded positions in what had been pre-merger Northwest aircraft categories. The training for the positions awarded to pilots from this vacancy bid began in January 2010 and is scheduled to continue through November. More than 250 pilots already have moved into new positions as a result of the vacancy bid awards. By May 1, 2010 more than 1000 pilots will have completed training and moved into new positions. The first commingled pilot crew, i.e., a crew consisting of one pre-merger Delta pilot and one pre-merger Northwest pilot, flew on March 2, 2010. As a result of the bid award under the combined pilot labor agreement, there will be increasing numbers of commingled pilot crews going forward.

19.     Delta has also taken substantial measures to integrate the pre-merger Northwest and pre-merger Delta flight attendants. For example, pre-merger Northwest flight attendants began wearing Delta uniforms on or about March 31, 2009, and the majority of in-flight passenger services have been harmonized to Delta standards and procedures, with completion scheduled for May 1. In August 2009, Delta began a major initiative to cross-train flight attendants on the safety features of all aircraft in the combined fleet, in order to qualify all post-merger flight attendants under FAA regulations to serve on all aircraft in Delta's combined fleet. That cross-training is scheduled to be substantially completed in March 2010. However, pending the resolution by the NMB of post-merger representation issues, the pre-merger Northwest flight attendants continue to work under the separate wages, benefits, work rules, seniority list, and bidding procedures contained in the pre-merger Northwest-AFA collective bargaining agreement. As a result, the pre-merger Northwest flight attendants are assigned only to work with other pre-merger Northwest flight attendants; they are not commingled with pre-merger

Delta flight attendants, although the pilots on some of their flights may now be pre-merger Delta pilots.

**AFA's Scope Clause Grievance Raises Representation Issues**

20.    Section 1 of the pre-merger Northwest-AFA collective bargaining agreement is entitled "Recognition, Scope and Job Security." Section 1.A., *inter alia*, defines the "Company" as "Northwest Airlines, Inc.," and Section 1.B.2.a provides in pertinent part that "[a]ll present and future cabin passenger service of the Company operating in aircraft operated by pilots on the Pilot System Seniority List of Northwest Airlines, Inc. shall be performed exclusively by the Flight Attendants on the Northwest Airlines, Inc. Flight Attendant System Seniority List under the terms of this Agreement. . . ."

21.    On March 4, 2010, the AFA filed the Scope Clause Grievance, seeking as relief, *inter alia*, "[t]hat the Company shall cease and desist the integration of all flight crews [i.e., pilots] and restore the status quo ante (that the Company shall schedule only pre-merger NW flight attendants to work on aircraft flown only by pre-merger NW pilots)." (Second parenthetical in original.) (A copy of the AFA's Scope Clause Grievance is attached hereto as Exhibit A.) On March 5, 2010, the AFA followed up the filing of its Scope Clause Grievance with a demand for expedited arbitration. (A copy of the AFA's demand is attached hereto as Exhibit B.) Delta's response to the AFA's demand, setting forth its position (as stated herein) that the Scope Clause Grievance is not subject to resolution through the System Board Procedure, will be sent to the AFA on March 12, 2010. (A copy of Delta's response is attached hereto as Exhibit C.)

22.    The relief which the AFA seeks in the Scope Clause Grievance would directly impact the work schedules and opportunities of all post-merger Delta flight attendants despite the

fact that the AFA has never represented any of the current Delta flight attendants who worked for Delta prior to the merger and who constitute approximately 65% of the combined post-merger Delta flight attendant workforce.

23.     With the start of Delta's summer flight schedule, some aircraft previously staffed by pre-merger Northwest flight attendants will be staffed from flight attendant bases populated by pre-merger Delta flight attendants, and vice versa. These adjustments will not have an adverse impact on the amount of flying available to pre-merger Northwest flight attendants. Under the remedy proposed by the AFA in the Scope Clause Grievance, pre-merger Delta flight attendants will be denied work opportunities on flights that would otherwise be available to them in the ordinary course of their work in connection with Delta's upcoming summer schedule. In addition, Delta would be required to involuntarily transfer hundreds of flight attendants, including pre-merger Delta flight attendants, to other flight attendant bases throughout the United States in order to staff the summer flights because many flight attendants would not be allowed under the AFA's proposed remedy to work on the flights that are most convenient to where they are based. Delta also likely would be required to "deadhead" a far greater number of flight attendants, including pre-merger Delta flight attendants, from their current bases to position them for flights operating out of other bases than would otherwise be required. If it did so, then flight attendants (including pre-merger Delta flight attendants) in many cases could receive less compensation and have more inconvenient work schedules than if they worked on flights originating from their bases.

24.     The relief sought by the AFA in the Scope Clause Grievance would also have a major impact on Delta's pilots, who are not represented by the AFA but rather by ALPA. There is no Pilot System Seniority List of Northwest Airlines, Inc. There is only a post-merger

11

combined Delta pilots system seniority list. Even if Delta somehow could "restore the status quo ante" (which it could not do) and staff pre-merger Northwest aircraft only with pre-merger Northwest pilots, as the AFA's Scope Clause Grievance requests, that would require Delta to violate its pilot collective bargaining agreement with ALPA. As noted in Paragraph 18 above, pilots already have bid for and been awarded vacancies, which is their right under the pilot labor contract based on their position on the combined pilot seniority list. The pilot contract does not permit Delta to rescind the numerous position changes that have occurred under the vacancy bid. Similarly, any attempt to re-bid the vacancy awards would have to honor pilots' choices of aircraft categories and positions consistent with their place on the combined seniority list. It would not be possible to preclude pre-merger Northwest pilots from bidding for and being awarded positions that would result in their being commingled with pre-merger Delta pilots without violating the combined, post-merger pilot labor contract. Even if this somehow could be done without violating the pilot contract (which it cannot), even attempting to make such changes would prevent implementation of Delta's summer flight schedule—a schedule which already has been published, marketed, and sold to the traveling public.

## CLAIM FOR RELIEF
### (Declaratory and Injunctive Relief
### Section 2, First, Of The RLA, 45 U.S.C. § 152, First, 28 U.S.C. §§ 2201, 2202)

25.     Delta repeats and realleges Paragraphs 1 through 24 of this Complaint as though fully set forth herein.

26.     The issues which the AFA seeks to resolve in the Scope Clause Grievance are inextricably intertwined with and implicate representation issues within the exclusive jurisdiction of the NMB and beyond the jurisdiction of the System Board Procedure. The AFA's efforts to pursue the Scope Clause Grievance through the System Board Procedure would conflict with the

exclusive jurisdiction of the NMB over representation issues, in contravention of Section 2, Ninth, of the RLA.

27.     By failing to utilize the statutory mechanism for resolving the representation issues implicated by its Scope Clause Grievance, i.e., recourse to the NMB, and seeking instead to adjudicate the Grievance through the System Board Procedure, the AFA has failed "to exert every reasonable effort to . . . settle all disputes . . . in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof" in the manner prescribed by the RLA, 45 U.S.C. § 152 (First).   Such failure may be enjoined by this Court.   *See Summit Airlines, Inc. v. Teamsters Local Union No. 295*, 628 F.2d 787, 795 (2d Cir. 1980).

28.     There is an actual controversy between Delta and the AFA as to whether, under the RLA, the Scope Clause Grievance may be adjudicated through the System Board Procedure. This Court therefore has jurisdiction under 28 U.S.C. § 2201(a) to "declare the rights and other relations" of Delta and AFA regarding the proper forum for resolution of the Scope Clause Grievance.

29.     Pursuant to 28 U.S.C. § 2202, this Court may enjoin the AFA from further pursuing resolution of the Scope Clause Grievance through the System Board Procedure.

### PRAYER FOR RELIEF

WHEREFORE, Delta prays for judgment against Defendant as follows:

A.     That the Court issue a declaratory judgment that the issues raised by the Scope Clause Grievance, which the AFA has sought to pursue by means of grievance and arbitration proceedings, implicate and are inextricably intertwined with representation issues within the

exclusive jurisdiction of the NMB under Section 2, Ninth of the RLA, 45 U.S.C. § 152 (Ninth), and thus are not within the jurisdiction of the System Board Procedure under the RLA.

B.     That the Court issue an injunction requiring the AFA to cease and desist from pursuing the Scope Clause Grievance through the System Board Procedure; and

C.     That the Court grant such other, further, or different relief as to which Delta may be entitled or which this Court deems just and proper to ensure that the AFA will comply with its statutory duties under the RLA.

Respectfully submitted,

Dated: New York, New York         O'MELVENY & MYERS LLP
       March 12, 2010

By: _____
     Robert A. Siegel
     Jeffrey I. Kohn

Times Square Tower
7 Times Square
New York, New York 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
E-mail:  rsiegel@omm.com

*Attorneys for Plaintiff Delta Air Lines, Inc.*

A

## ASSOCIATION OF FLIGHT ATTENDANTS-CWA, FILED ON NORTHWEST AIRLINES

## GRIEVANCE FORM

| | | | |
|---|---|---|---|
| **Grievant(s):** | JANETTE ROOK(0000239201) | **Date:** | March 04, 2010 |
| | | **AFA Grievance #:** | 88-77-02-036-10 |
| | | **Base:** | ALL |
| **Grievance Rep:** | GREGORY RIFFLE | **Rep's Phone #:** | |

## STATEMENT OF GRIEVANCE

**Statement of Facts:** (Include a brief statement of facts including date of violation.)

At a December 10, 2009 meeting the Company informed the Union that after the Federal Aviation Administration (FAA) issued a Single Operating Certificate (SOC) to Delta that the Company would begin integrating pilots, meaning that pre-merger Northwest (NW) pilots and pre-merger Delta (DL) pilots would no longer exclusively work on their respective pre-merger aircraft. The integration of pilots would result in pre-merger NW flight attendants no longer working exclusively with pilots on the Pilot System Seniority List of NW. The Union then informed the Company that such action would violate Section 1 of the Agreement. On Dec. 31, 2009, the FAA issued a SOC to Delta. On March 2, 2010, the Company operated flight 2586 with an integrated pilot crew. The Company has, or will soon, operate aircraft with pre-merger NW pilots, but without pre-merger NW flight attendants. The Company also has or plans to operate aircraft with a single flight attendant crew of both pre-merger NW and DL flight attendants. These actions violate flight attendant scope-of-work provisions.

**Applicable Contract Sections:** (State specific contract section violated or other basis of grievance.)

Section 1
Section 25
Any/all other related Sections and/or information

**Relief Sought:** (If not specified, AFA reserves the right to request all available remedies at any point during the grievance/system board process.)

That the Company shall cease and desist the integration of all flight crews and restore the status quo ante (that the Company shall schedule only pre-merger NW flight attendants to work on aircraft flown only by pre-merger NW pilots).
That the Company shall provide make whole relief to the Union and affected flight attendants.
And, any and all such other relief deemed just and necessary.

It is requested that copies of all correspondence relating to this grievance be sent to the grievant and the Union Officer / Designee, and to the AFA Legal Department as Listed Below. The grievant authorizes the Association of Flight Attendants, CWA AFL-CIO to act as his/her representative in the disposition of this grievance, and by so authorizing the grievance to be filed on his/her behalf, grants AFA the right to obtain all information necessary including your Base employment file, your Corporate employment file and your automated performance development file to process the grievance.

**Union Officer/Grievance Representative:** _____

cc: AFA LEGAL  twinston@afanet.org

- ☐ AFA National Office: 501 Third Street, N.W., Washington, D.C. 20001-2797, 202/434-1300
- ☐ ORD Field Office: 1 O'Hare Center, 6250 N. River Road, Suite 4200, Rosemont, IL 60018-4210, 847/292-7170
- ☐ PIT Field Office: 200 Marshall Drive, Coraopolis, PA 15108-2840, 412/262-3110



**ASSOCIATION OF FLIGHT ATTENDANTS-CWA,  AFL-CIO**

*501 Third Street, N.W., Washington, D.C.  20001-2797*

**Phone 202-434-1300**          **Fax 202-434-1319**

## VIA EMAIL - IFGRIEVE@NWA.COM

March 5, 2010

Mr. Brian Moreau
Director, Flight Attendant Scheduling
Northwest Airlines, Inc.
7200 - 34th Avenue South
Minneapolis, MN 55450-1106

RE:    Northwest Airlines and Association of Flight Attendants-CWA
       Grievance No. 88-77-02-036-10 (Violation of Sections 1, 25 and all related sections -
       Integration of flight crews - MEC)

Dear Mr. Moreau:

The Association of Flight Attendants-CWA, AFL-CIO hereby submits the above-referenced grievance to <u>expedited</u> arbitration for resolution per Section 1 of the parties' collective bargaining agreement.

1.     <u>Question at Issue:</u>

Whether the Company is in violation of Sections 1, 25 and all other applicable sections of the Agreement and/or established past practice.  If so, what is the appropriate remedy?

2.     <u>Statements of Facts:</u>

At a December 10, 2009 meeting, the Company informed the Union that after the Federal Aviation Administration (FAA) issued a Single Operating Certificate (SOC) to Delta that the Company would begin integrating pilots, meaning pre-merger Northwest (NW) pilots and pre-merger Delta (DL) pilots would no longer exclusively work on their respective pre-merger aircraft.  The integration of pilots would result in pre-merger NW flight attendants no longer working exclusively with pilots on the Pilot System Seniority List of NW.  The Union then informed the Company that such action would violate Section 1 of the Agreement. On December 31, 2009, the FAA issued a SOC to Delta.  On March 2, 2010, the Company operated flight 2586 with an integrated pilot crew.  The Company has, or will soon, operate aircraft with pre-merger NW pilots, but without pre-merger NW flight attendants.  The Company also has or plans to operate aircraft with a single flight attendant crew of both pre-merger NW and DL flight attendants.  These actions violate flight attendant scope-of-work provisions. As a result of the company's violation of the Agreement, a grievance was filed by the Union on March 4, 2010. Per Section 1 of the parties' Agreement, this matter is being submitted to expedited arbitration for final hearing and determination.

Case No.88-77-02-036-10
March 5, 2010
Page 2

3.  Position of the Union:

It is the position of the Union that the Company is in violation of the Agreement herein alleged:

WHEREFORE, the Union asks the Board to render a decision:

a.  that the Company is in violation of the Agreement and/or past practice as herein alleged;

b.  that the Company cease from future such violations;

c.  that any affected flight attendants be made whole, including reimbursement, with interest and back pay, for any and all monetary losses sustained due to the Company's violation;

d.  that the Company cease and desist the integration of all flight crews and restore the status quo ante (that the Company shall schedule only pre-merger NW flight attendants to work on aircraft flown only by pre-merger NW pilots).

e.  that the Association have such other, further or different relief as this Board may deem just and proper.

4.  Position of the Company

The Company's position is unknown.  It is requested to submit its position to the Board in writing upon receipt of a copy of this Letter of Submission as well as forward a copy to union counsel.

It is respectfully requested that this grievance be submitted to expedited arbitration per Section 1 of the parties' collective bargaining agreement.

Sincerely,

Patricia A. Friend
International President

PAF:TW

Enclosure

cc:  Greg Riffle, AFA MEC Grievance Chairperson
       via email - griffle@nwaafa.org
     Patricia Reller, AFA MEC Grievance Vice Chairperson
       via email - preller@nwaafa.org
     AFA Legal



 **DELTA**

**Walter A. Brill**
Labor Counsel
Human Resources and
Labor Relations

**Delta Air Lines, Inc.**
P.O. Box 20706
Atlanta, GA 30320

March 12, 2010

Sent via email and U.S. Mail

Peter C. Swanson, Esq.
Staff Attorney
Association of Flight Attendants-CWA
Northwest Master Executive Council
8011 34ᵗʰ Avenue So., #220
Bloomington, MN 55425

Re:  AFA Grievance No. 88-77-02-036-10

Dear Mr. Swanson:

This letter responds to the document which carries AFA Grievance No. 88-77-02-036-10, which you sent to me by email on March 5, 2010.

As you know, on December 31, 2009, Delta received a single operating certificate from the Federal Aviation Administration, which transferred to Delta the authority to conduct operations that had previously been conducted by Northwest. On that same date Northwest Airlines, Inc. ceased to exist as a legal entity and as an operating airline. Both of these actions were taken in accordance with long-term plans that had been publicly announced since Delta acquired Northwest on October 29, 2008. On January 31, 2010, Delta completed what is called the "inventory cutover," which merged the pre-merger Northwest passenger reservations system into Delta's, so that there are no longer any Northwest-coded flights, and no longer any Northwest passengers. As a result of these events, all Northwest operations have become Delta operations and it is no longer possible to distinguish between Delta operations and former Northwest operations. In other words, Delta and Northwest have become a single operating carrier for all purposes.

The National Mediation Board has exclusive jurisdiction to resolve representation disputes arising from an airline merger subject to the Railway Labor Act. Delta has repeatedly urged AFA to resolve representation issues arising from the Delta-Northwest merger by seeking a prompt election by the National Mediation Board.[1] The AFA did file to resolve representation issues among Delta flight attendants on July 27, 2009, acknowledging at that time that Delta and Northwest constituted a single transportation system for representation purposes and that a representation dispute existed. Unfortunately AFA withdrew its application on November 3, although AFA never repudiated the factual assertions in its filing.

In Delta's view, AFA's grievance is inextricably intertwined with representation issues which are within the exclusive jurisdiction of the National Mediation Board under Section 2, Ninth of the Railway Labor Act. As you know, Delta has abided by the provisions of AFA's

---

[1] A court has held that only employees or a union can initiate representation proceedings before the National Mediation Board; a carrier is not permitted to do so. *Railway Labor Executives' Ass'n v. National Mediation Board*, 29 F.3d 655, 662 (D.C. Cir. 1994) (*en banc*)

Peter C. Swanson, Esq.
March 12, 2010
Page 2

pre-merger agreement with Northwest which impact only pre-merger Northwest flight attendants, such as pay, benefits and work rules. AFA's position regarding work jurisdiction and flying assignments for different flight attendants working for the same airline, however, raises the same representation issues we discussed with you at our meeting of December 10, 2009. Such claims of contractual entitlement do not present arbitrable contract issues because they reach beyond the employees represented pre-merger by AFA and impact other Delta flight attendants in the same craft or class who are working on Delta-operated aircraft, and whom AFA does not represent. AFA's position would, pursuant to a contract to which the pre-merger Delta flight attendants have not consented, restrict the flight attendant work that those flight attendants are authorized to perform for their own airline. Our position is founded upon the cases that were attached to the email I sent to AFA General Counsel Ed Gilmartin, you and others on December 14, 2009, in follow-up to our December 10 meeting. For all of these reasons, the grievance is denied.

Since we briefed you and other AFA representatives on our position on December 10, no one from the AFA has advised us of any legal basis for reaching a different conclusion. Given that the AFA nevertheless continues to pursue a contractual grievance process that we believe raises a representation dispute, and since the remedies that AFA seeks in the grievance (including restricting work assignments for Delta pilots, which would be a violation of the pilots' collective bargaining agreement) have the potential to create significant harm to Delta, our employees and our customers, we believe that it is urgent for all concerned that this matter be resolved as promptly as possible in a legally appropriate manner. For that reason Delta has filed a complaint seeking a court ruling that the grievance raises a representation dispute and is not within the jurisdiction of the grievance and arbitration process under the pre-merger AFA contract. Under separate cover a courtesy copy of the complaint is being sent to Ed Gilmartin.

Sincerely,

Walter A. Brill
Counsel for Delta Air Lines, Inc.

cc: Susan Kramer